## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LINDA WISWELL FORBES,

     Plaintiff,

v.                                     CV 11-714 CG/WPL

COMMUNITY HEALTH SYSTEMS,
*et al.*,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' *Notice of Removal*, (Doc. 1), and Plaintiff's *Civil Complaint for Damages and Declaration of Plaintiff*, (Doc. 1-2). Both parties have consented to this Court adjudicating all dispositive matters in this case. (Doc. 8; Doc. 10). The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised in the premises, **FINDS** that the Court lacks subject matter jurisdiction over the complaint. The Court will therefore **REMAND** the case to the Fifth Judicial District Court, Chaves County, New Mexico.

### I.    Background

Plaintiff filed her *Civil Complaint for Damages and Declaration of Plaintiff*, ("complaint"), on July 6, 2011, in the District Court for the Fifth Judicial District in Chaves County, New Mexico. (Doc. 1 at 2). The complaint was filed *pro se*. The Complaint lists numerous causes of actions against Defendant Roswell Hospital Corporation, d.b.a Eastern New Mexico Medical Center ("ENMMC"), Community Health Systems - which is ENMMC's parent company - and several individual employees of ENMMC. (Doc. 1-2 at 1-2). Plaintiff

also asserted claims against unknown Defendants "Does 1-50." (*Id.*). Plaintiff's complaint presents two overarching factual narratives to support her claims. First, Plaintiff asserts that Defendant ENMMC and the individual Defendants conspired to create a hostile work environment for Plaintiff and that she was not treated equally on account of her medical disability. (Doc. 1-2 at 6-10). Second, Plaintiff claims that Defendants CHS and ENMMC made improper deductions to her paycheck, that Defendants submitted a fraudulent claim to Plaintiff's medical insurance provider, and that Plaintiff did not always receive an itemized statement of hours and deductions. (*Id.* at 4-6).

    a. **Hostile Work Environment Claim**

  Plaintiff claims that ENMMC, through her three supervisors, Vicky Eaton, Shill Breedyk, and Darleen Jones, conspired to create a hostile work environment for Plaintiff. Plaintiff asserts that she was verbally ridiculed by her supervisors in front of co-workers for "imagined deficiencies." (*Id.* at 6). She alleges that she had to work extra shifts to cover for other co-workers who did not come to work and that this exacerbated her gout, which made it difficult and painful for her to walk. (*Id.* at 6-7). Because of her gout, she requested a lightened workload from Vicky Eaton on several occasions, with the last request coming on February 10, 2011. (*Id.*).

  Plaintiff claims that her concerns were generally ignored or minimized. She believed that ENMMC would not take her complaints seriously because ENMMC had mishandled a previous injury that Plaintiff suffered at work in 2009. (*Id.* at 7-8). She claims that her 2009 injury was never properly diagnosed or treated and that she was forced to work for more than 9 months without proper care for her symptoms. (*Id.* at 7-9). Plaintiff had requested a few days off from Ms. Eaton after the 2009 injury but the request was denied.

(*Id.* at 8).

Because of her past experiences, Plaintiff did not believe that any of her supervisors would be sympathetic to her requests for time off. (*Id.* at 9). She claims that Vicky Eaton ignored her February 10, 2011, request for a lighter workload. (*Id.*). She eventually called Eaton that same day to say she was leaving early due to painful swelling in her right leg and emotional distress. (*Id.*). Plaintiff claims that Ms. Eaton hung up on her while she was trying to coordinate with Ms. Eaton to have another empoyee finish her shift. (*Id.*). At that point, Plaintiff felt that "she had no alternative at this point but to resign her position as she knew that there was no treatment for her pain and suffering, [and] that Defendants . . . were not concerned with Plaintiff's pain and suffering." (*Id.*).  Plaintiff resigned the next day. (*Id.*).

### b. Financial Claims

Plaintiff asserts that Defendants took a variety of inappropriate actions with regard to her paychecks and the medical insurance she received through her employment. (*Id.* at 4-6). Plaintiff states that she was forced to receive her wages through a direct deposit payment method even though she had told her employers that she did not want to receive her wages through direct deposit. (*Id.* at 4-5). She contends that ENMMC's mandatory direct deposit system was in violation of N.M.S.A. 1978 § 50-4-2(B). She also claims that she was involuntarily enrolled in a 401(K) mutual fund and that payments into the fund were automatically deducted from her wages. (*Id.* at 5). While she claims that her participation in the 401(K) fund was involuntary, she acknowledges that she was provided with an opportunity and the appropriate forms to opt out of the fund. (*Id.*).

Plaintiff asserts that she received a paycheck from Defendants on February 18, 2011 - a week after she resigned - but that the check did not include a statement of hours

3

and deductions. (*Id.*). The statement of hours and deductions was available though an online system which Plaintiff no longer had access to because she had resigned. (*Id.*). Defendants also sent her a check for the value of her accrued vacation time on March 4, 2011. (*Id.*). Plaintiff, relying on N.M.S.A. 1978 § 50-4-4, believes that the check should have been sent no later than February 18, 2011 - the next payday following her resignation.[1] Defendants also deducted a percentage of the check for health insurance premiums even though Plaintiff's medical insurance through the company had ended on March 1, 2011. (*Id.* at 6).

Plaintiff also complains that Defendant ENMMC filed a claim with Blue Cross & Blue Shield of Tennessee in excess of $1,900.00 for medical services rendered to Plaintiff on or around February 5, 2011. (*Id.*). Plaintiff does not claim that she did not receive the medical services, but argues that ENMMC never provided her with a "bill or an accounting of charges" relating to insurance claim. (*Id.*). By filing the claim, she believes that Defendant was attempting to "disparag[e] Plaintiff's credit by possibly claiming that Plaintiff failed or refused to pay what Defendant and the heath insurance company . . . claims was [her] share of said charges."

### c.   Plaintiff's Causes of Action

Plaintiff has asserted multiple causes of action based on the facts set forth above. She has asserted claims for 1) harassment, 2) negligence, 3) intentional infliction of

---

[1] Defendant rightly notes that N.M.S.A. 1978 § 5-4-4 covers only discharged employees and does not apply to Plaintiff. N.M.S.A. 1978 § 50-4-5 provides the appropriate regulation regarding the payment of wages to employees who have recently resigned. The statute states that whenever an employee resigns, his or her wages "shall become due and be payable at the next succeeding payday." *Id.*

emotional distress,  4) breach of right to use employee financial information, 5) conspiracy, 6) fraudulent conversion, 7) intentional infliction of physical distress, 8) loss of earning, loss of trade/commerce, 9) loss of earning capacity, 10) fraud, and 11) credit disparagement. (*Id.* at 1-4). Each cause of action is asserted against different combinations of Defendants.

The claims for harassment, conspiracy, and loss of earning capacity claims are asserted against all Defendants. (*Id.* at 2-4). The negligence and breach of right to use financial information claims are asserted against all Defendants except Escamilla. (*Id.* at 2-3). Only the harassment, negligence and breach of right to use employee financial information claims cite or refer to any statutes or sources of law.  The remaining claims are asserted against a combination of different Defendants and do not cite or mention any specific statutes or sources of law to support them (*See, Id.* at 3-4).

### d.   Removal

Plaintiff filed her complaint in New Mexico State District Court in Chaves County, New Mexico. (Doc. 1 at 1). Defendants removed the case to the United States District for the District of New Mexico based on the existence of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441. (*Id.*). The Court therefore turns to the appropriate standards for determining whether the removal was proper.

### II.   Standard of Review

The existence of subject matter jurisdiction is a prerequisite to the evaluation of a case on its merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that

of announcing the fact and dismissing the cause.") (quotation omitted).

A case "aris[es] under" federal law within the meaning of § 1331 if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire HealthChoise Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27–28 (1983)). Defendants bear the burden of proving that Plaintiff's complaint raises a colorable federal claim such that the Court may exercise jurisdiction over the case. *Marcus v. Kansas*, 170 F.3d 1305, 1309 (10th Cir.1999) ("[T]he party invoking federal jurisdiction bears the burden of proof.") (quoting *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir.1991)). Because federal courts are of limited jurisdiction, there is a presumption against removal jurisdiction and doubtful cases should be resolved in favor of remand. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

Because Plaintiff is proceeding *pro se*, the Court must construe her complaint liberally. *Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992). However, a court should dismiss a *pro se* plaintiff's claims that are supported only by vague and conclusory allegations. *Id.*

### III.   Analysis

Defendants contend that the complaint establishes federal question jurisdiction in two respects. They believe Plaintiff has stated a claim for relief under the Americans With Disabilities Ac ("ADA") by alleging a hostile work environment and citing to the "codes of the . . . Equal Employment Opportunity Commission." (Doc. 1 at 4) (citing 42 U.S.C. § 1201 *et seq*). Defendants further rely on the fact that Plaintiff states several times that she is

suing for violations of federal statutes, including "codes of the Internal Revenue Service, Equal Employment Opportunity Commission, Department of Labor, and various other federal . . . agencies which Plaintiff may be unaware of at this time." (Doc. 1-2 at 2). Plaintiff also states that Defendants' actions have forced her to hire an attorney to seek the "protection of the laws of the United States of America, through its various statutes and oversight agencies . . ." (*Id.* at 10). Defendants contend that "these allegations alone demonstrate that Plaintiff is explicitly relying on federal law to support her claims." (Doc. 1 at 4).

The Court finds that Plaintiff's causes of action arise solely under state law and that her conclusory citations to the "codes" of various federal agencies are insufficient to confer federal question jurisdiction over her complaint. None of Plaintiff's claims constitute a stand-alone federal cause of action and none of them depends on the resolution of a substantial question of federal law. Furthermore, although the factual allegations regarding the hostile work environment may suffice to state a claim under the ADA, the Court is without jurisdiction to consider that claim since Plaintiff failed to exhaust her administrative remedies.

### a.   Several of Plaintiff's Claims Do Not Constitute Causes of Action Under State or Federal Law

As noted by Defendants in their motion to dismiss, several of Plaintiff's claims, including the "breach of right to use employee financial information," and "intentional infliction of physical distress" do not constitute causes of actions. (Doc. 4 at 13). Plaintiff's allegation of "credit disparagement" does not constitute a stand-alone cause of action, but is rather an injury alleged to have resulted from some independent, typically tortious,

action. *Kukutash Min. Corp. v. Securities and Exchange Commission*, 309 F.2d 647, 651 n. 2 (C.A. D.C. 1962) ("Appellants . . .argue that their presence on [a restricted] list has damaged their reputation and credit . . . . These allegations sound in the nature of tort . . .").[2] Several other claims, such as "loss of earnings, loss of trade/commerce," and "loss of earning capacity" are types of damages, and are not causes of action. *See, e.g.*, *Hull by Hull v. United States*, 971 F.2d 1499 (10th Cir. 1992) (discussing the appropriate method for computing loss of future earnings as a measure of damages); *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945 (10th Cir. 1980) (noting that lost earnings are the appropriate measure of damages for employment discrimination).

### b.   The Remainder of Plaintiff's Claims Arise Under State Law

Plaintiff's remaining causes of action, including those for "harassment," "negligence," "intentional infliction of emotional distress," "conspiracy," "fraudulent conversion," and "fraud," arise solely under state law. *See, e.g.*, *Rose v. Utah*, 399 F. App'x 430, 433 (10th Cir. 2010) (noting that allegations of conversion, conspiracy, and intentional infliction of emotional distress arise under state law); *Jayme v. MCI Corp.*, 328 F. App'x 768 (3d Cir. 2008) (holding that claims of intentional and negligent infliction of emotional distress arise under state law and do not establish federal question jurisdiction); *Von Loh v. Synthes, Inc.*, 106 F. App'x 665, 666 (10th Cir. 2004) (holding that allegations of negligence and emotional distress claims raised only state law claims and did not establish federal question jurisdiction.); *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 299-300 (7th Cir. 2003)

---

[2] Congress did pass the "Fair Credit Reporting Act" ("FCRA") in 1970, regulating the creation and distribution of consumer credit reports. 15 U.S.C. § 1681 *et seq.* Plaintiff did not cite to the FCRA and there is no indication that Plaintiff's "credit disparagement" claim implicates the FCRA.

(holding that allegations of fraud do not establish federal question jurisdiction).

It is true that Plaintiff has accused Defendants of violating certain federal statutes, including "codes of the Internal Revenue Service, Equal Employment and Opportunity Commission, [and] Department of Labor." (Doc. 1-2 at 2). She also states that she brought suit in order to receive "the protection of the laws of the United States of America, through its various statutes and oversight agencies . . ." (Doc. 1-2 at 10). Defendants believe that Plaintiff's conclusory citation to the IRS, EEOC, and Department of Labor codes "alone demonstrate that Plaintiff is explicitly relying on federal law." (Doc. 1 at 4). The Court does not concur. These vague statements do not suffice to confer federal question jurisdiction over Plaintiff's claims. *See, e.g.*, *De La Garza v. De La Garza*, 91 F. App'x 508, 509 (7th Cir. 2004) ("The complaint's conclusory statement that Mrs. De La Garza violated [plaintiff's] rights under the First, Fourth, Sixth, and Fourteenth Amendment is hardly sufficient to transform this complaint into one stating a federal cause of action.").

As noted above, to establish federal question jurisdiction, "[t]he complaint must identify the statutory or constitutional provisions under which the claims arise, and allege sufficient facts to show that the case is one arising under federal law." *Martinez v. U.S. Olympic Committee*, 802 F.2d 1275, 1280 (10th Cir. 1986). Plaintiff's complaint did not so. Her complaint raises only state law claims and she identifies no federal constitutional provisions that apply to her case. Nor does she cite to any specific federal statutes. In contrast, her complaint explicitly cites two New Mexico state statutes - N.M.S.A. 1978 § 50-4-2(B), N.M.S.A. 1978 § 50-4-5 - to support her claims. (Doc. 1-2 at 3, 5).

Because Plaintiff raises only state law causes of action, the Court finds that it may

9

not exercise subject matter jurisdiction over those claims. Defendants' removal was therefore improper. *Hansen v. Harper Excavating Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011) ("Generally, the plaintiff is the master of [her] complaint, and if [she] files in a state court pleading only state-law causes of action, the case is not removable to federal court based on federal question jurisdiction.") (citing *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004)).

### c.   The Court Has No Jurisdiction Over Any Potential ADA Claim

The only concrete federal cause of action that Defendants have identified in the complaint relates to the Americans with Disabilities Act. Defendants contend that, even though Plaintiff never cited to the ADA, her allegation that Defendants created a hostile work environment and that she was not treated equally on account of her medical disability suffices to state a claim under that statute. (Doc. 1 at 5-7).

The Tenth Circuit has held that the creation of a hostile work environment on account of an employee's disability may state a cause of action under the ADA. *Lanman v. Johnson Cnty, Kan.*, 393 F.3d 1151, 1155 (We have not previously held whether a hostile work environment claim can be brought under the ADA. For the following reasons, we join our sister circuits that have held such claims are actionable.") (collecting cases) (internal citations omitted). However, prior to asserting a claim under the ADA in federal court, a prospective plaintiff must exhaust his or her administrative remedies by filing a grievance with the Equal Employment and Opportunity Commission. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2001). In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit. *Jones v. U.P.S., Inc.*,

502 F.3d 1176, 1183 (10th Cir. 2007) (citing *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir.2005)).

Plaintiff has not alleged that she ever filed a charge with the EEOC regarding the hostile work environment at ENMMC. In her *Declaration In Support of Request for Leave to Amend Complaint*, Plaintiff admits that she did not exhaust her administrative remedies and states that she "did not know she had to go to separate agencies to ask for a special investigation to have her complaint heard." (Doc. 12 at 2). Therefore, even if the Court were to construe her complaint as stating a claim under the ADA, the Court has no jurisdiction to consider such a claim since Plaintiff did not exhaust her administrative remedies.

## IV.   Conclusion

For the reasons set forth in this *Memorandum Opinion and Order*, the Defendants have not established that this Court may exercise subject matter jurisdiction over Plaintiff's complaint.

**IT IS THEREFORE ORDERED** that this case is remanded to the Fifth Judicial District Court, County of Chaves, State of New Mexico for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent